**UNITED STATES of America, Appellee,**

v.

**Milton R. ARONSON, Appellant.**

**No. 276, Docket 27942.**

United States Court of Appeals Second Circuit.

Argued March 14, 1963.

Decided June 6, 1963.

C. William Tayler, Washington, D. C. (Thomas A. Wadden, Jr., Washington, D. C., of counsel), for appellant.

Peter H. Morrison, Asst. U. S. Atty., New York City (Robert M. Morgenthau, U. S. Atty. for Southern District of New York, Thomas J. Cahill, Arthur I. Rosett, Asst. U. S. Attys., New York City, of counsel), for appellee.

Before MOORE, FRIENDLY and SMITH, Circuit Judges.

LEONARD P. MOORE, Circuit Judge.

The defendant (appellant), Milton R. Aronson, appeals from a judgment of conviction of the offense of unlawful, wilful and knowing use of the mails in a scheme to defraud (15 U.S.C.A. §§ 77q (a) and 77x, 18 U.S.C.A. § (2)) and of conspiracy to do so (18 U.S.C.A. § 371).

*The Indictment*

The indictment contained 30 counts and named a corporation, Kimball Securities, Inc., and 19 individuals. Counts One and Two charged unlawful use of the mails in connection with the purchase of stock of Great Western Enterprises, Inc., by two persons, resident respectively in Massachusetts and Maryland. Counts Three through Eleven related to stock of Mark, Inc. and Counts Twelve through Fourteen to stock of Perry Oil Company, the same statutory violation being charged. Counts Fifteen through Twenty-Four were based upon

the transmission of wires and telephone communications to various persons as part of a scheme to defraud (15 U.S.C.A. §§ 77q(a) and x; 18 U.S.C.A. § (2)), Counts Twenty-Five through Twenty-Nine dealt with unlawful use of the mails to sell unregistered securities of Mark, Inc. and Perry Oil Company (15 U.S.C.A. §§ 77e(a) (1) and x and Count Thirty was a conspiracy count which included all three stocks Great Western, Mark and Perry Oil Company (18 U.S. C.A. § 371).

*Pre-Trial Motions*

Prior to the trial, the defendants Sylvan B. Aronson and Milton R. Aronson sought by motion to transfer their prosecution to the Southern District of California, the area of their residence. The motion was denied on March 16, 1960. At a pre-trial conference on September 7, 1962, the government requested that the Aronsons be severed from the other defendants, that the trial proceed against them and that the trial against the remaining defendants be set for one week after the conclusion of the Aronsons' trial. On September 10, 1962, the prosecution announced that it would proceed against the Aronsons on Counts One, Two and Thirty and possibly three more. On September 14, 1962, these defendants again moved for a change of venue which was denied.

*The Trial*

The trial commenced on October 1, 1962 against the two Aronsons on Counts One, Two and Thirty. Sylvan was acquitted; Milton was convicted on all three counts.

*The Errors Asserted*

No errors relating to the sufficiency of the evidence or to the court's charge as to the essential elements of the crimes alleged in the indictment are asserted. A review of the facts constituting the scheme to defraud is, therefore, unnecessary.

■ I. The first error claimed to be prejudicial is the court's comment in its charge that "In order to keep this case within reasonable bounds, the Govern-

ment has elected to present proof on only three of the counts, the first, the second, and the 30th counts." The court then advised the jury that "We are, therefore, in this trial, concerned solely with the guilt or innocence of the defendants Milton Aronson and Sylvan Aronson on counts 1, 2 and 30 of the indictment."

These statements in the charge had been preceded by substantial colloquy between court and counsel as to the method of handling the situation created by the prosecution's restricting its proof to the Great Western stock promotion (counts 1, 2 and 30). Sylvan Aronson's counsel (Milton's counsel joining therein) moved to dismiss counts 3 through 29 and sought a judgment of acquittal as to them on the ground that the government had offered no proof therein. The court granted the motion.

When the question of how the jury should be advised of the action taken arose, counsel for Sylvan stated that if the court told the jury that "some were dismissed, they [the jury] could make out an inference that the others were sufficient." On appeal, counsel for Milton argues conversely that the court's reference to the limitation of the trial to the three counts "to keep this case within reasonable bounds" called for the inescapable inference in the minds of the jury that the government had an abundance of evidence as to the other twenty-seven counts which it withheld merely to shorten the trial. He contends that the court should have advised the jury that his client had been acquitted on counts 3 through 29. Whether such information would have pointed up possible guilt as to the remaining counts, as Sylvan's counsel feared in his argument concerning possible jury inferences, would be mere appellate speculation.

The court meticulously informed the jury of the issues to be determined by them and of the restriction to transactions in Great Western stock. No issues as to Mark, Inc. or Perry Oil stock were presented to the jury for decision. From the indictment itself, it must have been clear to the jury that the other counts

related not to Great Western but to Mark, Inc. and Perry Oil, as to which no proof had been offered. The issues to be resolved were kept in clear focus by the court at all times. The fears now expressed of improper inferences by the jury as a result of the court's comments are unwarranted.

II. In practically every criminal prosecution, the government's principal witness or witnesses are drawn from the ranks of co-defendants, co-conspirators or participants in the allegedly unlawful enterprise. Often they have pleaded guilty before trial. And so here. Joseph C. Kimball, a defendant who operated Kimball Securities, Inc., was an important witness. He had had direct dealings with Milton Aronson for the sale of Great Western stock. Therefore, if he pleaded guilty the jury might infer that Milton was also guilty. The prosecution called Kimball and, adhering to time-honored and approved practice, asked him if he had ever been convicted of a crime.[1] "Not to have done so would surely have subjected the prosecution to criticism."[2] Counsel on direct examination usually adopt the policy of bringing out such adverse facts as they know will be developed on cross-examination. Failure to disclose would then be characterized as an intent to conceal.

Needless to say, a subject so common to criminal trials has been passed upon by many appellate courts so that there is no longer any uncertainty as to the law.

In Davenport v. United States, 260 F.2d 591 (9th Cir., 1958) (mail fraud), a co-defendant pleaded guilty on the third day of the trial. The court stated to the jury, "We are not going to try Mr. Errion [a defendant] here any longer. He has pleaded guilty. He is safely in jail. I think we have all we can do to try the other six defendants that are here without discussing Mr. Errion any further" (260 F.2d p. 595). Another defendant, Montgomery, also pleaded guilty. The court in its instructions said "the pleas of Errion and Montgomery are no evidence of the guilt of any of the defendants nor evidence that a crime was committed" (260 F.2d p. 596). On appeal the court said, "[W]e see no error in the Court's informing the jury of the fact that these two persons had pleaded guilty" (260 F.2d p. 596). Thereafter, in Wood v. United States, 279 F.2d 359 (8th Cir., 1960) (mail fraud), there were nine defendants. Before trial, two withdrew their not guilty pleas and pleaded guilty. During the trial, three defendants withdrew their pleas of non guilty and pleaded guilty. The trial court in advising the jury of this change of plea said in part:

> " 'I want to tell you again the fact that such pleas were entered does not mean that the remaining three defendants on trial \* \* \* are guilty with them. The pleas are not evidence to the defendants remaining on trial that they are guilty, or the crime charged in the indictment was committed.

> " 'These pleas do not give rise to any inference as to the guilt of the remaining defendants here on trial. The guilt or innocence of the defendants still on trial must be determined solely by you, solely by the evidence introduced in the trial of this case.' " Id. 279 F.2d at 362.

These instructions were approved on appeal as was the denial of the motion for a mistrial based upon the pleas of guilty and the trial court's reference thereto. See, also, Richards v. United States, 193 F.2d 554 (10th Cir., 1951) and Nemec v. United States, 178 F.2d 656 (9th Cir., 1949).

---

1. "Q. Mr. Kimball, have you ever been convicted of a crime? A. Yes, I have pleaded guilty to several charges.
      \*     \*     \*     \*     \*
   "The Court: What crime did you plead guilty to?

   "The Witness: I pleaded guilty to selling securities.
   "The Court: Selling securities how?
   "The Witness: Telephone, mail."

2. United States v. Freeman, 302 F.2d 347, 350, 2d Cir., 1962.

■ In this circuit, somewhat similar situations have arisen, although counsel in the various cases have approached the problem somewhat differently. In United States v. Crosby, 294 F.2d 928 (2d Cir., 1961), a defendant pleaded guilty at the end of the first week of trial. The plea was accepted out of the presence of the jury "because counsel for most of the defendants felt a cautionary instruction would only serve to call the jury's attention to—and emphasize—the guilty plea, the court did not inform the jury of the circumstances concerning McCarthy's subsequent absence from the case and court room." Id. 294 F.2d at 948. On appeal this court said, "But the federal courts have uniformly held it not error, if proper cautionary instructions are given, for the jury to be informed during trial that one or more defendants have pleaded guilty, or even for the jury to be present when the pleas are entered." Ibid. See also United States v. Murray, 297 F.2d 812 (2d Cir., 1962); United States v. Freeman, 302 F.2d 347 (2d Cir., 1962).

■ This being the law, no error can be attributed to the trial court's informing the jury of the guilty plea. Its instructions to the jury conformed both adequately and accurately with the instructions approved by appellate courts in similar situations. The trial court adhered to proper practice in cautioning the jury by saying, "Let me point out that the fact that the Kimballs pleaded guilty is no proof whatsoever of the guilt of the two defendants who are on trial and that must be put out of your mind in determining the guilt or innocence of these two defendants, the Aronsons."

■ III. Appellant contends that denial of his September 1962 motion for a change of venue was an abuse of discretion. Whether the government should have made its application to sever some time prior to the eve of the trial (September 7, 1962 application; October 1, 1962 date fixed for trial), whether the convenience of the two defendants would have been better served by a California venue or whether expense to these defendants would have been avoided thereby are questions which must now be answered in the light of the paramount appellate question: were these defendants deprived of a fair trial as a result of the denial? There were many compelling reasons for New York venue and many for California. The ultimate object of the scheme was to sell Great Western stock to the public. These defendants chose to accomplish this by utilizing a New York distributor. Having made this choice, they can scarcely complain of a New York venue. There was no abuse of discretion. Furthermore, an examination of the record discloses that no prejudice to these defendants resulted from a New York trial.

■ IV. Lastly, appellant complains of allegedly illegal use of grand jury subpoenas to bring witnesses to New York for questioning by the prosecution. There is no contention that the testimony given by the two witnesses so served was false or was obtained by threats or coercion. In final analysis the test must depend on the good faith of the prosecution in obtaining the subpoenas. Failure to put the witnesses subpoenaed before the grand jury is not *ipso facto* proof of bad faith. After a witness has given a statement which would not justify his appearance before a grand jury, it would be unfair to him to subject him to such an ordeal. Although improper use of grand jury subpoenas cannot be condoned, the trial court is in the best position to satisfy itself as to any such impropriety. The witnesses here were subjected to full cross-examination as to the circumstances of their appearances and no proof was elicited of threats or false testimony.

Affirmed.