**UNITED STATES of America, Appellee,**

v.

**Andrew MUNCHAK, Jr., Appellant.**

**No. 673, Docket 34955.**

United States Court of Appeals, Second Circuit.

Argued March 8, 1971.

Decided June 1, 1971.

Whitney North Seymour, Jr., U. S. Atty., S. D. of New York (Daniel J. Sullivan and Edward M. Shaw, Asst. U. S. Attys., of counsel on the brief), for appellee.

Paul, Weiss, Goldberg, Rifkind, Wharton & Garrison, New York City (Simon H. Rifkind, Edward N. Costikyan, and Jack C. Auspitz, New York City, of counsel on the brief), for appellant.

Before HAYS and FEINBERG, Circuit Judges, and CURTIN, District Judge.*

CURTIN, District Judge:

The indictment charged the defendant with defrauding purchasers of electronic components sold to them by his firm, Astronetics, Inc. [Astronetics], by use of the mails. Four kinds of false representations were alleged: (1) That certain electronic components labeled "2N 1225 RCA" "were manufactured by firms which did not manufacture them"; (2) That they "were newer than they in fact were"; (3) That they "were in containers received from the manufacturer when this was not in fact the case"; and (4) That they "were of higher quality than was in fact the case." Each of the four counts set forth a different mailing date from August 31, 1967 to

---

* Of the Western District of New York, sitting by designation.

July 10, 1968. At the close of the government's case, the court dismissed Counts 1 and 2, which related to transistors labeled "JAN CGO 2N 1722." The court submitted to the jury Counts 3 and 4 relating to components labeled "RCA 2N 1225" which acquitted the defendant on Count 4, but convicted him on Count 3.

In his appeal, the defendant urges several grounds for reversal: (1) The government presented its case on the theory that the defendant misrepresented that the 1225 transistors were manufactured by RCA when, in fact, there was no evidence that they were not of RCA manufacture; (2) The trial court cut off cross-examination of a key government witness; (3) The trial judge improperly allowed the prosecutor to cross-examine the defendant about transactions charged in Counts 1 and 2 which had already been dismissed. Post trial, the defendant filed affidavits of witnesses who testified for the government, seeking a new trial on the grounds of perjury and newly discovered evidence. He claims that the denial of this motion was error.

On August 31, 1967, the defendant, Andrew Munchak, Jr., president of Astronetics, received a purchase order from F. G. Mason Engineering Co., a manufacturer of radio surveillance equipment, for 5,000 "RCA 2N 1225" transistors, 2500 to be delivered immediately. Astronetics, a wholesale distributing company, buys and sells transistors and other electronic parts. Two days later, Mr. Munchak himself ordered five "peg stamps" from Paterson Stamp Company, bearing the mark "RCA," encircled by "2N 1225" and two letter designations, "D" and "H7." A peg stamp is a small rubber stamp attached to a pencil-like shaft used to apply identifying symbols. "2N 1225" is known in the industry as as "Jedec" symbol which is usually stamped on the transistor casing. There are about 16,000 different types of transistors, but only about 200 different casing shapes. "2N" is a genus of transistors; "1225" represents the spec-

ification for a certain type. It is impossible to determine the specification of a transistor without reference to the Jedec symbol stamped on the casing. The letters "D" and "H7" represent the manufacturing and shipping dates. RCA is only one of two companies which manufacture "1225" transistors.

Astronetics received the peg stamps four days later and, six days after that, began to ship "2N 1225" transistors to Mason through intermediate distributors. 2116 transistors were shipped between September 12 and September 18, 1967.

The transistors received by Mason were marked with the symbols which were on the peg stamps ordered by Mr. Munchak early in September. Although the symbol "RCA" was on the transistors delivered to Mason, the markings "D," "7," and "H" were not of the type used by RCA. Further, the letter showing the plant of manufacture was missing, the letter designating the date of manufacture was in the wrong location, and the number showing the date of shipment was upside down. According to RCA systems, the number indicating the date of shipment indicated the shipment was made in August, 1967. RCA records revealed that it had not manufactured this type of transistor since 1964.

When the Mason Company installed the transistors, they failed to perform in the manner prior "RCA 1225's" performed in that they drew more current and had a significantly shorter life span.

In January, 1968, when RCA investigators confronted Munchak with samples of the transistors received by Mason, Munchak denied that the transistors came from Astronetics and stated that they were obviously counterfeit or overstamped.

In November, 1968, Munchak told the Postal inspectors that the transistors had been on his shelves in dirty old boxes, and that he had acquired the peg stamps to mark new individual boxes to ship the transistors in September, 1967.

He said that, after his employees marked the boxes, he disposed of the peg stamps. The evidence presented by the government rebutted this explanation. Mason received the transistors not in individual boxes, but in large transparent boxes and in plastic bags. Employees of Astronetics denied stamping boxes with the peg stamp. From the evidence, there was a strong inference that this stamping was done by Munchak himself.

■ There was substantial evidence to prove the guilt of the defendant. Munchak himself described the transistors as counterfeit or overstamped. The evidence pointed to the conclusion that Munchak purchased the false stamp, marked the transistors with it, knew that the stamp was false, and then lied about it to the investigators and again during his trial testimony. The transistors did not perform in the manner prior "RCA 1225's" did in that they were older than represented. There was substantial evidence before the jury for it to conclude that the transistors were not manufactured by RCA.

■ On direct examination, Anna Smith, an employee of the defendant, testified that she had never marked boxes or used a peg stamp similar to the previously described stamp. On cross-examination, she testified her supervisor was a Mr. McElwain. When trial counsel attempted to use grand jury testimony concerning this question, an objection was sustained. Since the question at issue—the identity of her supervisor—was a collateral matter not covered by her direct testimony, the ruling of the trial court was not an abuse of discretion. United States v. Mahler, 363 F.2d 673 (2d Cir. 1966); United States v. Lombardozzi, 335 F.2d 414 (2d Cir.), cert. denied 379 U.S. 914, 85 S.Ct. 261, 13 L. Ed.2d 185 (1964).

■ During cross-examination of appellant, the trial court permitted government counsel to question about "1722" transistors, which were the subject matter of Counts 1 and 2. The court had dismissed these counts at the end of the government's case for failure of proof. The prosecutor was allowed to cross-examine Munchak on the "1722" transaction as a similar act bearing on criminal intent. During cross-examination, Munchak testified about the source of the 1722's, how much he paid, the circumstances of their shipment, and what others told him about them. At the close of the case, the trial court struck all the testimony relating to the 1722's, ruling that the similar act proof was not sufficiently "clear and unequivocal" and involved "too much guesswork." Further, the court instructed the jury to disregard the 1722 testimony.

Cross-examination of a defendant in regard to similar acts to show intent is permissible. United States v. Ross, 321 F.2d 61 (2d Cir.), cert. denied 375 U.S. 894, 84 S.Ct. 170, 11 L.Ed.2d 123 (1963); United States v. Klein, 340 F. 2d 547, 549 (2d Cir. 1965). In any event, the trial court directed the jury to disregard the testimony concerning the 1722 transactions.

■ Post trial, defendant moved for a new trial, claiming that the conviction was obtained in part by the use of perjured testimony. To support his motion, defendant supplied affidavits from some of his employees who testified at the trial that they had never put "RCA 2N 1225" stamps on boxes. In their post-trial affidavits, they recalled that on occasion they had used peg stamps to mark boxes. However, not one of them ever claimed using peg stamps to mark any boxes which were the subject matter of this trial. Judge Weinfeld carefully considered this claim and rejected it, finding that the witnesses continued in the defendant's employ, that they were interviewed by defense counsel before trial, and were ready to help the defendant. The trial court's finding that they had testified truthfully is well supported by the evidence. No showing whatever was made that the proposed testimony would result in a different verdict.

The appellant's motion for a new trial was correctly denied. United States v. Costello, 255 F.2d 876 (2d Cir.), cert. denied 357 U.S. 937, 78 S.Ct. 1385, 2 L. Ed.2d 1551 (1958); United States v. DeSapio, 435 F.2d 272 (2d Cir. 1970).

Judgment of conviction affirmed.