UNITED STATES of America, Appellant,

v.

Henry GOMEZ LONDONO, Appellee.

No. 837, Docket 76–1570.

United States Court of Appeals,
Second Circuit.

Argued March 2, 1977.
Decided April 18, 1977.

Alvin A. Schall, Asst. U. S. Atty., Brooklyn, N. Y. (David G. Trager, U. S. Atty., E. D. N. Y., Brooklyn, N. Y., on the brief), for appellant.

Jeffrey D. Ullman, New York City (Ivan S. Fisher, New York City, on the brief), for appellee.

Before LUMBARD and OAKES, Circuit Judges, and BRYAN, District Judge.*

LUMBARD, Circuit Judge:

The government appeals, pursuant to 18 U.S.C. § 3731, from an order of the Eastern District entered on November 17, 1976, in which Judge Dooling granted appellee Henry Gomez Londono's motion to suppress evidence on the grounds that the warrant authorizing the search in which the evidence was seized was legally insufficient. See *United States v. Gomez-Londono*, 422 F.Supp. 519, 526 (E.D.N.Y.1976). We conclude that the warrant authorizing the search in this case was properly issued on a sufficient showing of probable cause; accordingly, we reverse.

On February 21, 1976 Drug Enforcement Administration agents informed customs agents that a reliable DEA informant had advised that some time between February 21 and 25, 1976, Henry Gomez Londono would leave New York for Colombia, South America. According to the informant, Gomez Londono would be carrying $100,000. to be used in completing a drug transaction. The informant provided a general physical description of appellee, as well as his birth date and passport number.

* Sitting by designation.

Customs agents took up surveillance on February 21 at the Avianca Airlines departure area at Kennedy International Airport. On February 22 an airlines employee advised the customs agents that an individual named Henry Gomez Londono was in the Avianca Airlines area of the terminal. The agents observed appellee and concluded that he matched the description provided by the informant. Two plain-clothes agents, Healy and Annunziato, then stopped appellee as he walked toward the Avianca departure area. Inspector Robert Como, who was in uniform, was then brought over; with an airlines employee acting as interpreter, Como introduced himself and agents Healy and Annunziato. Two Port Authority police officers regularly assigned to the terminal to observe departing passengers and an airport employee were also standing nearby but did not participate in the subsequent questioning or arrest of appellee.

Appellee was told that he was required to make a report declaring any money in excess of $5,000. that he was taking out of the country. He was then asked if he was taking more than $5,000. in currency out of the country. After this question was asked a second time, appellee replied that he had $900. and exhibited the cash he had in his pockets. The agents asked appellee a third time if he was carrying in excess of $5,000. and appellee then took an envelope from his jacket; he handed the envelope to the agents and explained that he did not know what was in it. The agents observed something green through an opening in the envelope. They opened it and discovered $10,-000. in $100. bills and a photograph of Gomez Londono. Appellee told the agents that he had been asked to deliver the envelope to Bogota, Columbia.

Appellee was then told that he was in custody. His airlines ticket, passport, and baggage claims were taken from him; his baggage, already placed aboard an Avianca aircraft, was taken by customs officials from the plane and brought to the customs office at the International Arrival Building along with appellee. At the International Arrival Building appellee was advised of his constitutional rights and was interviewed. He was then taken to the Metropolitan Correctional Center in New York City.

The next morning, February 23, appellee was arraigned. On February 24 agent Annunziato submitted an affidavit to the magistrate in support of an application for a warrant authorizing a search of appellee's baggage for currency. The affidavit, which was described by the district court as "far more complete than is usually the case," 422 F.Supp. at 526, recited the facts substantially as set forth above. The affidavit also stated that a DEA agent had stated in a telephone call from South America that the informant had furnished highly reliable information in the past, but that for security reasons he could not provide further information about the informant. A search warrant issued forthwith. 31 U.S.C. §§ 1058, 1101(b) and 18 U.S.C. § 1001 were cited in the warrant as the statutes believed to be violated. The search of appellee's baggage that followed revealed approximately $45,-000. in cash and two loaded .38 caliber revolvers.

On March 2, 1976 appellee was charged in a three count indictment with knowingly and willfully making a fraudulent declaration to customs agents in violation of 18 U.S.C. § 1001 (count one), willfully transporting currency in the amount of $44,780. without filing a report as required by 31 U.S.C. 1101(b) (count two), and, knowingly delivering firearms to Avianca Airlines for transportation in foreign commerce without appropriate notice to the carrier in violation of 18 U.S.C. § 922(e) (count three).

Following his indictment appellee moved to suppress all statements made by him and all evidence seized from his person and baggage. On the stipulated facts and after hearing argument, Judge Dooling granted the motion to suppress in all respects. Turning first to count two, the court found that there could be no violation of 31 U.S.C. § 1101(b). The court noted that section

1101,[1] which requires, *inter alia*, that individuals transporting currency in excess of $5,000. outside of the United States file a report as specified in § 1101(b), does not itself prescribe the time and place for the filing of reports. This and other information is prescribed by administrative regulations. Thus, as the court observed, 31 C.F.R. § 103.23(a)[2] provides that each person physically transporting currency in excess of $5,000. on any one occasion from the United States to a point outside it must file a report; 31 C.F.R. 103.25(b)[3] further specifies that unless otherwise directed or permitted, such reports shall be filed "at the time of departure" with the customs officer in charge at any point of departure. The district court found that Gomez Londono had not yet reached the "time of departure" within the meaning of 31 C.F.R. 103.25(b) when he was stopped and questioned by the customs agents and, thus, his duty to comply with section 1101(b) never matured.[4] Thus, the court rejected the government's argument that the crime was complete when appellee committed his baggage to

1. 31 U.S.C. § 1101 provides in relevant part:
   § 1101. *Reports*
   *Persons required to file*
   (a) Except as provided in subsection (c) of this section, whoever, whether as principal, agent, or bailee, or by an agent or bailee, knowingly—
   (1) transports or causes to be transported monetary instruments—
   (A) from any place within the United States to or through any place outside the United States, . . .
   in an amount exceeding $5,000 on any one occasion shall file a report or reports in accordance with subjection (b) of this section.
   *Contents of filed report*
   (b) Reports required under this section shall be filed at such times and places, and may contain such of the following information and any additional information in such form and in such detail, as the Secretary may require:
   (1) The legal capacity in which the person filing the report is acting with respect to the monetary instruments transported.
   (2) The origin, destination, and route of the transportation.
   (3) Where the monetary instruments are not legally and beneficially owned by the person transporting the same, or are transported for any purpose other than the use in his own behalf of the person transporting the same, the identities of the person from whom the monetary instruments are received, or to whom they are to be delivered, or both.
   (4) The amounts and types of monetary instruments transported.
   The penalty provision for violation of the requirements of § 1101, and the regulations promulgated thereunder, is found in 31 U.S.C. § 1058, which reads as follows:
   Whoever willfully violates any provision of this chapter or any regulation under this chapter shall be fined not more than $1,000, or imprisoned not more than one year, or both.

2. 31 C.F.R. § 103.23(a) provides as follows:
   Each person who physically transports, mails, or ships, or causes to be physically transported, mailed, or shipped, currency or other monetary instruments in an aggregate amount exceeding $5,000 on any one occasion from the United States to any place outside the United States, or into the United States from any place outside the United States, shall make a report thereof. A person is deemed to have caused such transportation, mailing or shipping when he aids, abets, counsels, commands, procures, or requests it to be done by a financial institution or any other person. A transfer of funds through normal banking procedures which does not involve the physical transportation of currency or monetary instruments is not required to be reported by this section.

3. C.F.R. 103.25(b) provides in relevant part as follows:
   (b) Reports required to be filed by § 103.-23(a) shall be filed at the time of entry into the United States or at the time of departure, mailing or shipping from the United States, unless otherwise directed or permitted by the Commissioner of Customs. They shall be filed with the Customs officer in charge at any Customs port of entry or departure, or as otherwise permitted or directed by the Commissioner of Customs . . . . They shall be on forms to be prescribed by the Secretary and all information called for in such forms shall be furnished.
   The actual form used to file a report is known as Form 4790, entitled "Report of International Transportation Currency or Monetary Instruments." *See United States v. San Juan*, 545 F.2d 314, 315 (2d Cir. 1976).

4. The district court indicated that the "time of departure" could not be reached until appellee had actually boarded the plane or had at least received his boarding pass. Thus, in the court's view, the agents should not have acted until appellee had been given a Form 4790, see note 3, supra, had filled it out falsely, and "had received his boarding pass, and was ready to board, or had taken his place in the aircraft." 422 F.Supp. at 525. Given the disposition of this case, we express no view on the district court's interpretation of the statute and regulations.

international transport and made a false declaration to customs agents concerning the amount of money he intended to take abroad, on the ground that appellee had not himself gone far enough to incur any duty under the reporting requirements of the statute.

Turning next to count one, the court found that appellee could not be indicted for a false answer to interrogation unless the questioning was fair under the circumstances and in the light of the statutory purposes behind the currency reporting requirements. Although it found that the circumstances surrounding the questioning did not amount to a "custodial interrogation" so as to mandate the giving of the *Miranda* warnings, the court found that "when the Government undertakes to interrogate a man in the knowledge that if he gives a truthful answer it will be wholly beneficial to him, and if he gives an untruthful answer he may commit two crimes, due process of law requires that the interrogation be such that the expected or probable result is compliance with law and not the eliciting of a violation of law." 422 F.Supp. at 526.

Having found that appellee could not be held to have committed the offenses charged in counts one and two, the court found that whether count three could stand depended on the validity of the search warrant. Noting that given the Annunziato affidavit, the magistrate could not but have been persuaded that a warrant should issue, the court nonetheless held that the nature of the defects in counts one and two was such that it "necessarily" followed that the warrant was legally insufficient. Accordingly, the evidence was ordered suppressed.[5]

The court did not expand on why, given the defects in counts one and two, it "necessarily" followed that the search warrant was legally insufficient. However, the

court's rationale appears to have been two-pronged. First, the court seems to have reasoned that because it found that appellee had not gone far enough to violate § 1101, the magistrate could not have had probable cause to believe a violation of that statute had taken place. Second, the court appears to have found that appellee's statements to the customs agents on February 22 were obtained in violation of due process and that the recitation of these statements in the supporting affidavit irreparably tainted the warrant.

On appeal the government, while not challenging the court's findings regarding the sufficiency of counts one and two, contends that the court erred in holding that appellee's statements were improperly obtained and tainted the search warrant and that the warrant was legally insufficient. We agree and reverse that part of the court's order mandating suppression of the evidence.

The government argues that authority for the search was based upon 31 U.S.C. § 1105, which provides, *inter alia*, that a search warrant may issue upon a showing of probable cause that "monetary instruments are in the process of transportation and with respect to which a report required under section 1101 of this title has not been filed."[6] Gomez Londono contends that a report is not "required under section 1101" until the "time of departure"; thus, paraphrasing the district court's reasoning, appellee argues that since it was held that he had not reached the "time of departure," he was not "required" to file a report and no search warrant could issue. In effect, appellee argues that despite the court's finding that the magistrate had ample justification for his conclusion that a warrant should issue, since the court later determined that appellee had not reached the "time of departure" as a matter of law,

---

5. The district court ordered that the following evidence be suppressed: (1) statements made by appellee to customs agents on February 22, 1976; (2) $10,000. taken from appellee by the agents on February 22; and (3) $45,000. and two .38 caliber revolvers seized during the search of appellee's baggage.

6. Although the district court's opinion does not specifically refer to 31 U.S.C. § 1105, the government's brief in opposition to the motion to suppress clearly brought the statute to the court's attention.

there could not have been probable cause to believe that appellee had gone far enough to be "required" to file a report.

■ The district court's approach simply fails to consider that the issue here is not whether appellee could be convicted under 31 U.S.C. §§ 1058, 1101, but whether the facts placed before the magistrate were sufficient to warrant a person of reasonable caution in the belief (1) that monetary instruments in excess of $5,000. were in the process of transportation, (2) that appellee had ventured far enough to be required to file a report, and (3) that such a report had not been filed. Cf. *Brinegar v. United States,* 338 U.S. 160, 175–76, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949); *Carroll v. United States,* 267 U.S. 132, 162, 45 S.Ct. 280, 69 L.Ed. 543 (1925). There can be no doubt that the information provided by the informant, the observations of the agents, and appellee's own statements and actions were sufficient to justify a reasonable belief that unreported currency in excess of $5,000. might be found in appellee's baggage. See, e. g., *Draper v. United States,* 358 U.S. 307, 312–13, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959); · *United States v. Rueda,* 549 F.2d 865, 870 (2d Cir. 1977); *United States v. Rollins,* 522 F.2d 160, 164 (2d Cir. 1975), cert. denied, 424 U.S. 918, 96 S.Ct. 1122, 47 L.Ed.2d 324 (1976). Similarly, given appellee's evasive behavior and his claim that he did not know that the envelope in his jacket pocket contained $10,000. in cash—after he was informed of the reporting requirement and asked three times whether he was carrying in excess of $5,000.—the magistrate might reasonably have concluded that appellee's behavior amounted to an evasion of the requirement to file a report.[7] Finally, in light of the fact that appellee had obtained a ticket, had checked his baggage, and was headed toward the departure area when he was stopped, we find that the magistrate could reasonably have concluded that there was probable cause to believe appellee had reached a point at which he was "required" to file a report.

■ A determination of probable cause made by a magistrate on the basis of a detailed affidavit is entitled to deference by a reviewing court. *Aguilar v. Texas,* 378 U.S. 108, 111, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964); *United States v. Canestri,* 518 F.2d 269, 273 (2d Cir. 1975); *United States v. Ramirez,* 279 F.2d 712, 716 (2d Cir.), cert. denied, 364 U.S. 850, 81 S.Ct. 95, 5 L.Ed.2d 74 (1960). We think it was abundantly clear from the affidavit before the magistrate that there was good reason to believe that appellee was taking a large amount of cash out of the country in violation of law. The agents took the only action possible to prevent this by retrieving appellee's baggage and proceeding to have the search of that baggage authorized by search warrant.[8] While the magistrate here was

7. It must be emphasized that 31 U.S.C. §§ 1058 and 1101 punish not the transportation of money, but the willful failure to file a report. See *United States v. San Juan,* supra, 545 F.2d at 319. Although appellee was made aware of his obligation to file a report, he was never actually tendered a Form 4790 and it may be that his statements and conduct on February 22 could not establish beyond a reasonable doubt a willful failure to file. This, however, was not the issue before the magistrate. Appellee refused to admit at any point that he was knowingly carrying in excess of $5,000. and did not produce the envelope containing $10,000. until he had been asked three times whether he was taking more than $5,000. out of the country. Thus, the magistrate may reasonably have concluded that appellee's statement that he was carrying $900. was a declaration that he was not carrying in excess of $5,000. and need not file a report. Appellee's rather incredible assertion that he was unaware of the contents of the envelope was further evidence that he did not intend to reveal the true amount of cash he was carrying which, as the contents of the envelope made clear, was in excess of $5,000. The point here is simply that the magistrate had ample reason to believe that the statute either had been or was in the process of being violated.

8. Given the disposition of this issue, we find it unnecessary to reach the government's contention, raised for the first time in its reply brief, that the search of appellee's baggage was justified in any event under the "border search" rationale. See *United States v. Stanley,* 545 F.2d 661, 667 (9th Cir. 1976).

dealing with statutes and regulations that charitably may be described as ambiguous, he had to act without benefit of adversarial argument by counsel. It makes no difference that the district court later held that appellee had not reached the "time of departure." [9]

■ We also reject the apparent finding of the district court that the questioning of appellee violated due process and that his statements were illegally obtained and could not be used to establish probable cause. See, e. g., *Wong Sun v. United States*, 371 U.S. 471, 485–86, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963); *United States v. Paroutian*, 299 F.2d 486, 488–89 (2d Cir. 1962).

■■ The agents first advised appellant that he was required to make a report declaring any money he was taking out of the country in excess of $5,000. and then asked him if he was taking more than $5,000. in currency with him. We cannot agree that the agents violated due process by failing to tell appellee that, in essence, he had nothing to lose by telling the truth. Cf. *United States v. San Juan*, 545 F.2d 314, 319, n.18 (1976). Whatever appellee may have believed about the possibility of self-incrimination, it was clearly the duty of the agents to ask the questions they did of someone about to leave the country. Even where an individual correctly believes that an answer to an inquiry by a government agent may be incriminating, this does not create a privilege to lie. See *United States v. Mandujano*, 425 U.S. 564, 577, 96 S.Ct. 1768, 48 L.Ed.2d 242 (1976); *Bryson v. United States*, 396 U.S. 64, 72, 90 S.Ct. 355, 24 L.Ed.2d 264 (1969). As the district court held, the circumstances surrounding the questioning did not amount to a custodial interrogation, see, e. g., *Beckwith v. United States*, 425 U.S. 341, 345–48, 96 S.Ct. 1612,

48 L.Ed.2d 1 (1976); *Oregon v. Mathiason*, 429 U.S. 492, 97 S.Ct. 711, 50 L.Ed.2d 714 (1977) (per curiam); further, there is no reason to believe that appellee's responses were involuntary.

Although, as Judge Dooling found, the better practice here might have been for the customs agents to have advised appellee that if he filled out the appropriate form he would be free to depart the country with as much money as he desired (unless, of course, there was probable cause to hold him for a violation of the narcotics laws or detain him as a material witness), we cannot say that customs agents have a constitutional obligation to advise those who are suspected of being lawbreakers that it is in their best interests to comply with the law. Cf. *United States v. Steinberg*, 551 F.2d 510, 514 (2d Cir. 1977); *United States v. Chevoor*, 526 F.2d 178, 182, 184–85 (1st Cir. 1975), cert. denied, 425 U.S. 935, 96 S.Ct. 1665, 48 L.Ed.2d 176 (1976).

Having found that there was no violation of due process in the agents' questioning of appellee, it follows that the magistrate properly considered appellee's statements in determining that there was probable cause for the issuance of the warrant. Accordingly, the order of the district court requiring suppression of the evidence is reversed.

9. We do not mean to suggest that a search warrant can be upheld simply on the basis of a magistrate's good faith belief that a crime has been alleged in the affidavit, regardless whether in fact any crime has been alleged. We hold only that under the unusual circumstances presented by this case, the magistrate was warranted in finding that there was probable cause to believe a violation of law had occurred.