**UNITED STATES of America,**

v.

**Sansao Campos PEREIRA, Defendant.**

**No. 78 CR 371.**

United States District Court, E. D. New York.

Dec. 12, 1978.

Edward R. Korman, U. S. Atty., E. D. N. Y. by Douglas K. Mansfield, Asst. U. S. Atty., Brooklyn, N. Y., for plaintiff.

Charles A. Stillman, New York City, for defendant.

## OPINION AND ORDER

PLATT, District Judge.

The law requires that anyone transporting more than $5,000.00 in cash across United States borders must first file a report with the United States Customs Service.[1] On May 23, 1978, at John F. Kennedy Airport, United States Customs agents arrested Sansao Campos Pereira after he boarded a flight bound for Rio de Janiero, Brazil. At that time, Pereira was carrying $300,-000.00 in cash and had not filed the required report.

Pereira, a Brazilian national, was a founder and active member of the Brazilian affiliate of an international exchange student organization called Youth for Understanding (hereinafter "YFU"). On May 23, 1978, Pereira arrived at JFK Airport with $300,000.00 of YFU funds in his possession and prepared to board a Varig Airlines flight from New York City to Rio de Janeiro, Brazil. However, Pereira did so without filing the required declaration form. Immediately prior to his boarding, United States Customs Service agents approached Pereira addressed him by name and asked him whether he had anything to declare, to which he replied that he had nothing to declare. After Pereira boarded his flight, the agents arrested him and took from him the $300,000.00.

On July 3, 1978, the United States Attorney filed an Information alleging a violation of 31 U.S.C. § 1058, a misdemeanor.[2] Pereira agreed to plead guilty to the misdemeanor, allegedly so that he could return to his home in Brazil. On July 7, 1978 Pereira was arraigned before Magistrate Chrein and attempted to enter a guilty plea. However, upon questioning Pereira as to the events leading up to his arrest, the Magistrate found that sufficient factual basis to support a guilty plea did not exist, and refused to accept Pereira's plea. Faced with an unsatisfactory statement of guilt, yet urged by Pereira's attorney to accept the plea of guilty to the misdemeanor, the Magistrate then considered acceptance of an *Alford* plea.[3] The Magistrate inquired as to whether the guilty plea presented a legal advantage to the defendant, in particular as to whether the government was waiving charges of a higher degree which could be pressed in exchange for a guilty plea. In response, the Assistant United States Attorney raised the possibility of felony charges and objected to the *Alford* plea. And again, stating that he remained unconvinced that Pereira had knowingly committed an act in violation of the law, the Magistrate refused to accept Pereira's plea of guilty and granted a five (5) day adjournment for the government's reconsideration of bringing more serious charges.

---

1. See, 31 U.S.C. §§ 1101, 1058.

2. This charge corresponds to Count Two of the Superseding indictment.

3. *North Carolina v. Alford,* 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970).

484

Aware of potential speedy trial problems, the Magistrate then addressed the question of excludable time. He stated that the Speedy Trial Act contemplates an excludable period based on withdrawal of a guilty plea, but here, in his view, as there was no accepted guilty plea, there was no withdrawal, and thus no excludable time. The Magistrate then directed that a plea of not guilty be entered.[4]

On July 12, 1978, when the matter came before the Magistrate for a status report, the prosecutor stated that no decision had been reached as to additional charges, but subsequent to the July 12 status conference, the Government did press an additional charge. And on July 27, 1978, in a two count superseding indictment, the grand jury charged that Sansao Campos Pereira "did knowingly and willfully make a false and fraudulent statement and representation . . . to an agent of the United States Customs Service that he did not possess more than five thousand dollars ($5,000.00)" in violation of 18 U.S.C. § 1001 (Count One) and "did knowingly and willfully transport monetary instruments . . . (in the amount of) approximately three hundred thousand dollars ($300,000.00) . . . without filing a report" in violation of 31 U.S.C. §§ 1101(b), 1058 (Count Two).[5] Pereira appeared before this Court on August 29, 1978; he entered a plea of not guilty and waived under the Sixth Amendment, the Speedy Trial Act, this Court's Speedy Trial Plan and the Rules of this Circuit, his right to a speedy trial and his right to move to dismiss in the event he was not accorded a speedy trial.

Defendant Sansao Campos Pereira has now brought before this Court a motion to dismiss the indictment based on three grounds. First, he contends that his oral denial to the Customs Agents on May 28, 1978, to the effect that he had nothing to declare, was not a statement within the purview of 18 U.S.C. § 1001, that his conduct therefore did not violate the statute and that Count One should be dismissed pursuant to Rule 12(b) of the Federal Rules of Criminal Procedure (Fed.R.Crim.P.). Second, he asserts that Count One fails to allege a material element of § 1001 in that it does not allege a "willful" violation of the filing requirement, and for this reason as well, Count One should be dismissed pursuant to Rule 12(b) Fed.R.Crim.P. And third, focusing not on the contents of the indictment, but on the time in which it was filed, Pereira argues that the entire superseding indictment, filed 20 days after his aborted guilty plea and 65 days after his arrest, was not timely, (and notwithstanding his waivers) was filed in violation of the Speedy Trial Act of 1974, 18 U.S.C. § 3161, et seq., and the Eastern District Plan for the Prompt Disposition of Criminal Cases formulated pursuant to the Speedy Trial Act of 1974, 18 U.S.C. § 3161–74 (hereinafter "Plan") and thus should be dismissed with prejudice pursuant to Rule 48(b) Fed.R. Crim.P.

## DISCUSSION

A. Statement within the scope of 18 U.S.C. § 1001.

Pereira contends that the Customs Agent who asked him on May 28, 1978 at JFK Airport whether he had anything to declare "knew (he) . . . was coming, knew he was walking through the door . . . knew he had the money and . . . knew that in all probability he was going to answer no."[6] Given those circumstances, Pereira argues that the statement which formed the basis for the 18 U.S.C. § 1001 charge was not a "statement" within the scope of 18 U.S.C. § 1001 but, merely a "negative response to a person who already knew the correct answer."[7] In the alterna-

---

4. Transcript of Proceeding before Magistrate Chrein, July 7, 1978.

5. Superseding Indictment, 78 CR 371, filed July 27, 1978, Count One, the felony charge, was the additional charge. Count Two corresponds to the original information.

6. Transcript of Proceedings before Judge Platt, oral argument of motion, October 12, 1978.

7. Id.

tive, Pereira argues that even if his response were to be considered a "statement", it neither misled the Customs agents, nor perverted the legitimate function of the United States Customs Service. Thus, it was not material and did not violate 18 U.S.C. § 1001 as a matter of law.

■ Section 1001 of Title 18, in relevant part, imposes criminal penalties on one who knowingly and willfully makes any false, fictitious or fraudulent statements or representations in any matter within the jurisdiction of any department or agency of the United States. *United States v. Goldfine,* 538 F.2d 815 (9th Cir. 1976). *See* 18 U.S.C. § 1001. The Second Circuit interprets this statute broadly.[8] Its "[a]nalysis . . . reveals no ambiguity. The elements of the offense are 1) a statement, 2) a falsity, 3) that the false statement be made 'knowingly and willfully,' and 4) that the false statement be made in a 'matter within the jurisdiction of any department or agency of the United States.'" *United States v. McCue,* 301 F.2d 452, 454 (2d Cir.), *cert. denied,* 370 U.S. 939, 82 S.Ct. 1586, 8 L.Ed.2d 808 (1962), *citing, United States v. Silver,* 235 F.2d 375 (2d Cir.), *cert. denied,* 352 U.S. 880, 77 S.Ct. 102, 1 L.Ed.2d 80 (1956). In keeping with its liberal interpretation of the terms of the statute, the Second Circuit has applied the term "statement" to statements not required by law, not under oath, and not in writing. *United States v. Adler,* 380 F.2d 917 (2d Cir. 1967), *cert. denied,* 389 U.S. 1006, 88 S.Ct. 561, 19 L.Ed.2d 602 (1968), and cases cited therein; *United States v. Mahler,* 363 F.2d 673 (2d Cir. 1966) (specifically upholding application of § 1001 to oral statements) *United States v. McCue,* 301

F.2d at 456. Given this framework, Pereira's contentions directly conflict with interpretation of § 1001 adopted by the Second Circuit. His "negative response" to the Customs agents must be defined as a "statement," well within the scope of § 1001.

■ Pereira further argues that his response falls under the protection of the "exculpatory no" exception to § 1001 and, as a matter of law, cannot be considered a statement for the purposes of § 1001 prosecution.[9] However, this contention as well fails to comply with the Second Circuit's broad interpretation. *See generally, United States v. McCue,* 301 F.2d at 455 and cases cited therein. Granted, in the Second Circuit, the exculpatory no question remains open. But, although the Second Circuit has not yet explicitly rejected the exculpatory no doctrine *per se,* neither has it adopted the doctrine. *United States v. Adler,* 380 F.2d at 922. And it has clearly rejected "any theory of narrow applicability [of § 1001]." *United States v. McCue,* 301 F.2d at 455.

Yet, even assuming arguendo that the exculpatory no exception was binding upon this Court, Pereira's response would not qualify for its protection. The exculpatory no cases have, for the most part, derived from a reluctance, on the part of some courts, primarily in the Fifth and Ninth Circuits,[10] to uphold prosecution under § 1001 for statements made to a federal agent during the investigation of criminal conduct. Critical to determination that the statement falls under protection of the exculpatory no exception is a finding of possible self incrimination.[11] The prevailing ra-

8. *See generally, United States v. McCue,* 301 F.2d 452 (2d Cir.), *cert. denied,* 370 U.S. 939, 82 S.Ct. 1586, 8 L.Ed.2d 808 (1962), and cases cited therein.

9. *See e. g., United States v. Schnaiderman,* 568 F.2d 1208 (5th Cir. 1978); *United States v. Chevoor,* 526 F.2d 178 (1st Cir. 1975), *cert. denied,* 425 U.S. 935, 96 S.Ct. 1665, 48 L.Ed.2d 176 (1976); *United States v. Bush,* 503 F.2d 813 (5th Cir. 1974); *Paternostro v. United States,* 311 F.2d 298 (5th Cir. 1962).

10. *Id., See, also, United States v. Rose,* 570 F.2d 1358 (9th Cir. 1978); *United States v. Bedore,* 455 F.2d 1109 (9th Cir. 1972).

11. *See e. g., United States v. Bush,* 503 F.2d at 818–19.

In *United States v. Rose,* 570 F.2d 1358 (9th Cir. 1978), the Court held that a false statement made to border agents during a United States Customs inspection regarding the amount the defendant had to declare did not fit within the exculpatory no exception and was a material

tionale, supporting the use of the exception has been that a person should not be compelled to be a witness against himself. 380 F.2d at 922. *See, United States v. Stark,* 131 F.Supp. 190 (D.Md.1955).

But here, Pereira's statement was clearly not exculpatory. No criminal sanctions would have ensued from properly declaring the $300,000. No law makes criminal or prohibits the export of U.S. currency. Rather, the crime lay in failing to report the export. Pereira could have responded truthfully to the agents, without risking self incrimination. Thus his false response, far from exculpating him in a criminal investigation, became in itself, a violation of the law. It was a knowing, false representation which obstructed a statutorily ordained administrative function of a government agency.[12] And, as such, it properly fell within the purview of § 1001.[13]

■ Finally, Pereira contends that his statement was not material, and thus could not have violated § 1001, as a matter of law. This argument likewise lacks merit. It is settled in this Circuit that the false statements proscribed by § 1001 need not be proved material. *United States v. Mahler,* 363 F.2d at 678; *United States v. Aadal,* 368 F.2d 962, 964 (2d Cir.), *cert. denied,* 386 U.S. 970, 87 S.Ct. 1161, 18 L.Ed.2d 130 (1966); *United States v. Marchisio,* 344 F.2d 653, 666 (2d Cir. 1965); *United States v. McCue,* 301 F.2d at 456; *United States v. Silver,* 235 F.2d 375 (2d Cir.).

■ And again, even assuming arguendo that materiality were a required element of § 1001, Pereira's false statement clearly meets the test of materiality. The Ninth

Circuit, in its most recent pronouncement on the element of materiality with respect to the exculpatory no doctrine, framed the critical question respecting materiality as follows:

"'[C]ould the false statements have affected or influenced the exercise of a governmental function?' . . . [T]he test is the intrinsic capabilities of the false statement itself, rather than the possibility of the actual attainment of its end as measured by collateral circumstances.'"

*United States v. Goldfine,* 538 F.2d at 820–21, *citing, Brandow v. United States,* 268 F.2d 559, 565 (9th Cir. 1959), and *United States v. Quirk,* 167 F.Supp. 462, 464 (E.D. Pa.1958), *aff'd* 266 F.2d 26 (3d Cir. 1959). In *Goldfine,* the allegedly immaterial statement was made by a registered pharmacist during "the course of an inspection conducted by the regulatory agency charged with the duty of investigating the manner in which he was complying with the requirements imposed upon him by law." 538 F.2d at 821. As with the Customs agents in the case at bar, the *Goldfine* investigators already knew the correct answers to the questions asked and were not misled by the false response. Nonetheless, emphasizing the potential and not the actual impact of the statement on agency action, the Court of Appeals for the Ninth Circuit found that the false statement was material and was within the scope of § 1001.[14] *A fortiori* Pereira's false response in the case at bar, regardless of its actual impact on the Customs agents involved, carried the *potential* of inducing agency reliance and of perverting a legitimate function of the agency, and

---

statement within the scope of § 1001. The Court based its conclusion on the facts that "the border agent's inquiries were a routine exercise of his *administrative* responsibility . . . (and) a truthful answer to the inquiries would not have involved self-incrimination." 570 F.2d at 1364.

**12.** *See United States v. Rose,* 570 F.2d 1358.

**13.** *See United States v. Goldfine,* 538 F.2d 815 (9th Cir. 1976) and discussion *infra.*

**14.** The major difference between the case at bar and *Goldfine* is that Goldfine made his false

statement which violated § 1001 after having received *Miranda* warnings. But, in the case at bar, since an affirmative answer to the question asked by Customs agents concerning the amount a traveler has to declare, in itself, carries no criminal penalties, there was no need to give *Miranda* warnings. *Cf. United States v. Gomez Londono,* 553 F.2d 805, 811 (2d Cir. 1977) (Customs agents failure to tell defendant that he had nothing to lose in telling the truth when asking him whether he was taking more than $5,000.00 out of the country did not violate due process).

therefore was material and within the scope of § 1001.

Therefore, for the foregoing reasons, Pereira's negative oral response to the Customs agents at JFK Airport on May 23, 1978 was a statement within the scope of 18 U.S.C. § 1001. Accordingly, Pereira's motion to dismiss Count One of the superseding indictment is hereby denied.

B. Sufficiency of Count Two—Statement of a Material Element of the Offense.

■ Pereira's second major argument asserts that Count Two of the superseding indictment which states:

> On or about the 23rd day of May, 1978, within the Eastern District of New York, the defendant SANSAO CAMPOS PEREIRA did knowingly and willfully transport monetary instruments, to wit, approximately $300,000 in United States currency, from Washington, D.C., onto Varig Airlines Flight 855 bound for Rio de Janeiro, Brazil at John F. Kennedy Airport without filing a report in accordance with Title 31, United States Code, Section 1001(b) [1101(b)]. (Title 31, United States Code, Section 1058).

fails to allege a material element of 31 U.S.C. § 1058 and consequently should be dismissed pursuant to Rule 12(b), Fed.R. Crim.P. Pereira maintains that although the indictment does properly allege that defendant "did knowingly and willfully transport monetary instruments," it fails to allege a "willful" failure to file a report. The government does not take issue with the fact that it must prove willful failure to file and submits that the indictment, which uses the language "knowingly and willfully" immediately prior to the description of the proscribed conduct, charges each and every element of the crime. Clearly, this is a matter of construction. It is the opinion of this Court that, given the wording of the indictment, the words "knowingly and willfully" in Count Two modify not only the words "transport monetary instruments" but also the words "without filing a re-port." It might have been otherwise if the words "knowingly and willfully" had been separated from the word "filing" by a sentence termination or even a comma and a conjunction but such is not the case here. Accordingly, Count Two does allege each required material element of the crime charged, and Pereira's motion to dismiss Count Two is hereby denied.

C. Speedy Trial Requirements.

Third, Pereira argues that the time limits and procedures set forth in this Court's Plan * provide that any indictment or information subsequent to an arrest which occurred between July 1, 1977 and July 1, 1978 must be filed by the government within 45 days of arrest (Plan § 3). He asserts that no provision in either the Speedy Trial Act or the Plan tolls the interval between the filing of the original information and the filing of the superseding indictment and, citing Sections 5(b) and 5(d)(5) of the Plan, contends that any superseding indictment must also be filed within 45 days of arrest regardless of the existence of an already pending charge. Thus, as the government filed the superseding indictment 65 days after his arrest, allegedly without excuse for delay, Pereira urges the Court to exercise its discretionary power pursuant to § 10e of the Plan and Rule 48(b), Fed.R.Crim.P., to dismiss the superseding indictment with prejudice.

The Government contends, and this Court accepts its argument as meritorious, that, taken in the full context of § 5 of the Plan, § 5(d)(5) simply means that a superseding indictment or information may be filed at any time "without regard to the existence of the original charge," but that trial on such superseding charge must commence within the period that corresponds to the particular situation set forth in 5(d)(1), (2) or (3).

■ Section 5(d)(1) applies when the defendant obtains dismissal of the original charge on non speedy trial grounds. In such case, the date on which trial of the

---

* See Appendix for pertinent provisions of Eastern District Plan.

superseding charge must commence is computed "without regard to the existence of the original charge." This language appears to be based on the original version of 18 U.S.C. § 3161(d) (S. 754, 93 Cong.2d Sess.). Indeed, the Senate report to S. 754 [15] indicated that "the time limits will begin to run from the date of the filing of the subsequent complaint," the time limit now provided for in § 5(d)(1), "without having to comply with the time limits imposed by the filing of the earlier complaint." [16]

Section 5(d)(2) applies when the original charges remain pending at the time of the filing of the superseding charges. In such situation, as in the case at bar, the Plan requires only that the trial of the subsequent charge and the trial of the original charge must commence on the same date.

Section 5(d)(5), the section at issue here, explicitly provides that the superseding indictment or information must be obtained and arraignment conducted "without regard to the existence of the original charge." This phrase is identical to that used in 5(d)(1) and must have the same meaning. It must allow "the time limits imposed by subsections 3161(b) and (c) to run afresh." [17]

Consequently, when applied to the case at bar, § 5(d)(5) requires that the *trial* of the charges in the superseding indictment must commence within the time limit for trial set by the original information, but the time within which the superseding indictment is obtained and in which arraignment on the superseding information must be held is to be computed "without regard to the existence of the original information." [18] Thus, the superseding indictment, filed 65 days

after arrest did not violate the Plan and should not be dismissed.

However, it must be noted that, even if there were a violation of the Plan, and this Court has found there was not, dismissal of the information or the indictment for violation of the Speedy Trial Act is not yet mandatory. The sanctions imposed by the Speedy Trial Act, 18 U.S.C. § 3162(a) and the Plan § 10e will not become fully effective until July 1, 1979. Until that time, any decision to dismiss lies fully within the discretion of this Court. [19] The governing standard is, then, the balancing test set by *Barker v. Wingo,* 407 U.S. 514, 530–34, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). Under *Barker,* however, dismissal is not warranted here.

In *Barker* the Supreme Court identified four factors which should be assessed in determining whether a particular defendant has been deprived of his speedy trial rights: (i) length of delay, (ii) the reason for the delay, (iii) the defendant's assertion of his right, and (iv) prejudice to the defendant. 407 U.S. at 530, 92 S.Ct. 2182. *Barker* considered the first factor, the length of delay, as "a triggering mechanism", stating that the delay must be "presumptively prejudicial" before inquiry into the other factors is required. 407 U.S. at 530, 92 S.Ct. 2182. Here the 20 day "delay" in the filing of the superseding indictment, if it is to be considered a delay at all (and in view of the foregoing discussion, this Court finds that it was not) was miniscule. [20] Moreover, Pereira was aware that the government was considering bringing additional charges. (*See,* Minutes of Arraignment before Magistrate Chrein, *supra* ).

15. Senate Report No. 93–1021 at 33.

16. *Id.*

17. *Id.*

18. This time limit would be extended of course in the event of a continuance granted under 18 U.S.C. § 3161(h)(8) or excluded periods under (h)(1)–(7) if available.

19. *United States v. Carini,* 562 F.2d 144, 148 (2d Cir. 1977). *See also, United States v. Lord,*

565 F.2d 831, 840 (2d Cir. 1977). *See generally,* Platt, *The Speedy Trial Act* of 1974: A Critical Commentary, 44 *Bklyn.L.Rev.* 757 (1978).

20. Evaluation here is relative. But in context a 20 day delay is indeed small. *See e. g., U. S. v. Carini,* 562 F.2d 144 (2d Cir. 1977)(34 month delay considered a sufficient trigger); *Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972) (7 years delay).

And, there is no indication that the 20 day "delay" in filing the superseding indictment in any way caused a delay of the trial.[21] In the case at bar, the 20 day "delay" provides a weak if not wholly insufficient trigger for further inquiry. And, even if it were sufficient, evaluation of the remaining three factors weighs heavily in favor of the Government.

Only with respect to the second *Barker* factor, the reason justifying the delay, might the balance tip slightly toward Pereira. Herein, the Government advanced no justification for delay. But there is no showing of a deliberate attempt by the Government to delay the trial nor to gain a tactical or strategic advantage over the defense. Such evidence, if it existed, would weigh heavily against the Government.[22] At worst, there exists the "more neutral reason" of negligence which "should be weighted less heavily." 407 U.S. at 531, 92 S.Ct. 2182. At best, the internal Government consideration of the complexity of the exculpatory no question might have validly justified delay.[23]

Third, on August 29, 1978, 33 days after the filing of the superseding indictment, Pereira, before this Court, expressly and knowingly waived his right to a speedy trial and his right to move to dismiss the indictment in the event he was not given a speedy trial. At that time, Pereira's attorney outlined his proposed motions but made no mention of a motion based on speedy trial grounds. (Transcript of Arraignment, August 29, 1978). Only upon bringing the present motion did Pereira express the desire to retrieve his speedy trial rights.

In this context, it seems clear that Pereira has not timely asserted his rights to a speedy trial in satisfaction of the *Barker v. Wingo* standard. Moreover, it seems quite clear that Pereira now asserts that right not for the purpose of obtaining a speedy *trial* in accordance with the Speedy Trial Act, the Plan and the Sixth Amendment, but solely to obtain dismissal of the indictment.[24]

Fourth, the 20 day delay caused insufficient prejudice here to warrant dismissal. *Barker v. Wingo* assessed prejudice to the defendant in the light of three major interests which the speedy trial right was designed to protect: (i) prevention of oppressive pretrial incarceration, (ii) minimization of anxiety and concern of the accused and (iii) limitation of the potential of impairing the defense (407 U.S. at 532, 92 S.Ct. 2182), with particular emphasis on the last. In the case at bar, Pereira was not incarcerated. Nor can it be said that an additional 20 days unduly aggravated his already existing anxiety. Most important, given that Pereira was aware, at least from the time of the initial arraignment before Magistrate Chrein on July 7, 1978 that the Government was considering bringing additional charges of a higher degree, and given that the prosecutor mentioned those charges on the record at the time of the arraignment, this Court does not find that the 20 day delay, during which the Government filed these charges, had the potential of impairing Pereira's defense.

Thus, on balance, weighing each of the four factors outlined in *Barker v. Wingo* as applied to the facts at bar, this Court holds

---

**21.** Indeed by his waivers, defendant for all practical purposes concedes that there has been no delay in his trial attributable to the Government or this Court.

**22.** *See, Barker v. Wingo*, 407 U.S. at 531, 92 S.Ct. 2182; *United States v. Hillegas*, 578 F.2d 453, 461 (2d Cir. 1978).

**23.** *See, Barker v. Wingo*, 407 U.S. at 531, 92 S.Ct. 2182; *see also, United States v. Carini*, 562 F.2d 144, 150 (2d Cir. 1977) which suggests that delay attributable to the complexity of the charges would provide an excusable reason for delay.

**24.** Here again it must be borne in mind that defendant has voluntarily, in open court and under oath, waived his right to move to dismiss the indictment for failure to give him a speedy trial. Thus it appears that the defendant is seeking to subvert this Court's Plan solely to advance his own interest and not to advance any public interest in a speedy trial of his case. Neither the Act nor this Court's Plan were designed for any such purpose and if they were they might well be said to be void as against public policy. *See,* Platt, 44 *Bklyn.L.Rev.* at 774.

that Pereira was not deprived of his rights to a speedy trial.

Accordingly, and for all of the foregoing reasons, Sansao Campos Pereira's motion to dismiss the indictment is hereby denied.

SO ORDERED.

United States District Court, Eastern District of New York—Plan for prompt disposition of criminal cases pursuant to Speedy Trial Act of 1974, 18 U.S.C. § 3161

Section 3. *Time Within Which an Indictment or Information Must be Filed.*

(a) *Time Limits.* If an individual is arrested or served with a summons and the complaint charges an offense to be prosecuted in this district, any indictment or information subsequently filed in connection with such charge shall be filed within the following time limits:

(1) If the arrest or service occurs before July 1, 1977, within [60] days of arrest or service;

(2) If the arrest or service occurs on or after July 1, 1977, but before July 1, 1978, within [45] days of arrest or service;

(3) If the arrest or service occurs on or after July 1, 1978, but before July 1, 1979, within [35] days of arrest or service.

(b) *Measurement of Time Periods.* If a person has not been arrested or served with a summons on a Federal charge, an arrest will be deemed to have been made at such time as the person (i) is held in custody solely for the purpose of responding to a Federal charge; (ii) is delivered to the custody of a Federal official in connection with a Federal charge; or (iii) appears before a judicial officer in connection with a Federal charge.

(c) *Related Procedures.*

(1) At the time of the earliest appearance before a judicial officer of a person who has been arrested for an offense not charged in an indictment or information, the judicial officer shall establish for the record the date on which the arrest took place.

(2) In the absence of a showing to the contrary, a summons shall be considered to have been served on the date of service shown on the return thereof.

Section 5. *Time Within Which Trial Must Commence.*

(a) *Time Limits.* The trial of a defendant shall commence within the following time limits:

(1) If the arraignment occurs before July 1, 1977, within [180] days of the arraignment;

(2) If the arraignment occurs on or after July 1, 1977, but before July 1, 1978, within [120] days of the arraignment;

(3) If the arraignment occurs on or after July 1, 1978, but before July 1, 1979, within [80] days of the arraignment.

(b) *Retrial.* The retrial of a defendant shall commence within 60 days from the date the order occasioning the retrial becomes final. If the retrial follows an appeal or collateral attack, the court may extend the period if unavailability of witnesses or other factors resulting from passage of time make trial within 60 days impractical. The extended period shall not exceed 180 days.

(c) *Withdrawal of Plea.* If a defendant enters a plea of guilty or nolo contendere to any or all charges in an indictment or information and is subsequently permitted to withdraw it, the arraignment with respect to the entire indictment or information shall be deemed to have been held on the day the order permitting withdrawal of the plea becomes final.

(d) *Superseding Charges.* If, after an indictment or information has been filed, a complaint, indictment, or information is filed which charges the defendant with the same offense or with an offense required to be joined with that offense, the time limit applicable to the subsequent charge will be determined as follows:

(1) If the original indictment or information was dismissed on motion of the defendant [not made pursuant to the Speedy Trial Act] before the filing of the subsequent

charge, the time limit shall be determined without regard to the existence of the original charge.

(2) If the original indictment or information is pending at the time the subsequent charge is filed, the trial shall commence within the time limit for commencement of trial on the original indictment or information.

(3) If the original indictment or information was dismissed on motion of the United States Attorney before the filing of the subsequent charge, the trial shall commence within the time limit for commencement of trial on the original indictment or information, but the period during which the defendant was not under charges shall be excluded from the computations. Such period is the period between the dismissal of the original indictment or information and the date the time would have commenced to run on the subsequent charge had there been no previous charge.

(4) In cases in which paragraph (2) or (3) applies but no arraignment is held on the original indictment or information, the time limit for commencement of trial shall be computed as if such arraignment had been held on the last permissible day, determined under section 4(a).

(5) The time within which an indictment or information must be obtained on the subsequent charge, or within which an arraignment must be held on such charge, shall be determined without regard to the existence of the original indictment or information.

(e) *Measurement of Time Periods.* For the purposes of this section:

(1) An arraignment shall be deemed to take place as provided in section 4(b)(1).

(2) A trial in a jury case shall be deemed to commence at the beginning of voir dire.

(3) A trial in a non-jury case shall be deemed to commence on the day the case is called, provided that some step in the trial procedure immediately follows.

(f) *Related Procedures.*

(1) Pre-trial conferences pursuant to Rule 17.1, Federal Rules of Criminal Procedure, shall be conducted as soon after the arraignment as possible, consistent with the priorities of other matters on the court's criminal docket.

(2) The court shall have sole responsibility for setting cases for trial after consultation with counsel. At the time of arraignment or the pre-trial conference or as soon thereafter as is practicable, each case will be set for trial on a day certain or listed for trial on a weekly or other short-term calendar.

(3) Individual calendars shall be managed so that it will be reasonably anticipated that every criminal case set for trial will be reached on the day or within the week or other short-term calendar period set for trial. Neither a conflict in schedules of Assistant United States Attorneys nor a conflict in schedules of defense counsel will be ground for a continuance or delayed setting except under circumstances approved by the court and called to the court's attention at the earliest practicable time. The United States Attorney will familiarize himself with the scheduling procedures of each judge and will assign or reassign cases in such manner that the government will be able to announce it is ready for trial.

(4) In the event that a complaint, indictment, or information is filed against a defendant charged in a pending indictment or information or in an indictment or information dismissed on motion of the United States Attorney, the trial on the new charge shall commence within the time limit for commencement of trial on the original indictment or information unless the court finds that the new charge is not for the same offense charged in the original indictment or information or an offense required to be joined therewith.

(5) At the time of the filing of a complaint, indictment, or information described in paragraph (4), the United States Attorney shall give written notice to the court if the new charge is not for the same offense charged in the original indictment or information or an offense required to be joined

therewith and of his position with respect to the computation of the time limits.

(6)(A) In the event the judge to whom a case is assigned for trial is actually engaged in another proceeding on the day set for such trial, he may grant a continuance pursuant to section 6(a)(8) until after the conclusion of the other proceeding, upon the findings required by that section and a finding that it is likely the other proceeding will not be concluded in due course prior to the expiration of the time limit specified in section 5 for the commencement of such trial. However, no such continuance shall be granted if prior to the commencement of the other proceeding it was clear beyond a reasonable doubt from facts brought to the court's attention that such other proceeding would not be concluded prior to the expiration of such time limit.

(B)(1) As used in paragraph 6(A) "other proceeding" shall mean a trial or an evidentiary hearing.

(2) As used in paragraph 6(A) "day set for such trial" shall mean either the day set for trial or the last day of the week or other short-term calendar period set for the commencement of the trial.

Section 10. *Sanctions.*

(a) *Defendants in Custody.* A defendant in custody whose trial has not commenced within the time limit set forth in section 6(a)(1) shall, if the failure to commence trial was through no fault of the defendant or his counsel, be released subject to such conditions as the court may impose in accordance with 18 U.S.C. § 3146. Nothing herein shall require that a defendant in custody be released except as required by 18 U.S.C. § 3164(c).

(b) *High-Risk Defendants.* A high-risk defendant whose trial has not commenced within the time limit set forth in section 6(a)(2) shall, if the failure to commence trial was through no fault of the attorney for the government, have his release conditions automatically reviewed. A high-risk defendant who is found by the court to have intentionally delayed the trial of his case shall be subject to an order of the court

modifying his nonfinancial conditions of release under chapter 207 of title 18, U.S.C., to ensure that he shall appear at trial as required.

(c) *Government Not Ready for Trial Within Six Months.* If the government is not ready for trial within the time prescribed by section 6A, and if the defendant is charged only with non-capital offenses, the defendant may move in writing, on at least ten days' notice to the government, for dismissal of the indictment or information. Any such motion shall be decided with promptness. The court's order dismissing the indictment or information shall be with prejudice unless the court finds that the government's neglect is excusable, in which event the dismissal shall not be effective if the government is ready to proceed to trial within ten days. Failure of the defendant to move for dismissal prior to trial or entry of a plea of guilty or nolo contendere shall constitute a waiver of the right to dismissal under this paragraph.

(d) *Alleged Juvenile Delinquents.* An alleged delinquent in custody whose trial has not commenced within the time limit set forth in 18 U.S.C. § 5036 shall be entitled to dismissal of his case pursuant to that section unless the Attorney General shows that the delay was consented to or caused by the juvenile or his counsel, or would be in the interest of justice in the particular case.

(e) *Dismissal Not Required.* Except as required by paragraph (c) of this section and by 18 U.S.C. § 5036, failure to comply with the time limits prescribed herein shall not require dismissal of the prosecution. The court retains the power to dismiss a case for unnecessary delay pursuant to Rule 48(b) of the Federal Rules of Criminal Procedure.