**UNITED STATES of America,**

v.

**Juan HERNANDEZ, Defendant.**

**No. 85 Cr. 728.**

United States District Court,
E.D. New York.

July 7, 1986.

Reena Raggi, U.S. Atty., E.D.N.Y., Brooklyn, N.Y. by Thomas H. Roche, Asst. U.S. Atty., for U.S.

Gerald B. Lefcourt, P.C., New York City by Gerald B. Lefcourt, Joshua L. Dratel, Gary G. Becker, and Condon, Latona, Pieri & Dillon, P.C., Buffalo, N.Y. by John W. Condon, Jr., for defendant.

## MEMORANDUM AND ORDER

PLATT, District Judge.

Juan Hernandez, the defendant in this case, has been charged in a two-count indictment with attempting to transport monetary instruments in excess of $10,000 from a place outside of the United States into the United States without filing the required currency report and with willfully making a false statement on a United States Customs Declaration Form. The statutory Sections involved are 31 U.S.C. § 5316(a) and § 5322(a) and 18 U.S.C. § 1001. Defendant has moved for the suppression of all evidence seized and any statements made, and for discovery and a bill of particulars.

### I. *Factual Background*

Through an agreement with Canada, the United States maintains a pre-clearance center at Dorval Airport in Montreal for the purpose of screening passengers bound for the United States. The pre-clearance center is manned by personnel of United States Government agencies, including the United States Customs Service ("Customs Service") and the Immigration and Naturalization Service ("INS"). On November 7, 1985, Inspector Joseph Haigh of the Customs Service was on duty at the center.

Inspector Haigh noticed the defendant casting furtive glances at the United States Customs area while making boarding arrangements for his flight. This conduct made Inspector Haigh suspicious of the defendant. When defendant approached the Customs area, Inspector Haigh conducted the same Customs procedure for defendant as he was doing for all other passengers. The Inspector examined the defendant's travel documents, asked general questions, such as where the defendant lived, and entered defendant's name into the Treasury Enforcement Communications System ("TECS") computer file.

Defendant, although claiming to live in Quebec, Canada, held a Colombian passport and was scheduled to depart on a Delta Airlines flight to Miami with connecting arrangements to Panama. Defendant's name showed up in the TECS output as an individual suspected of smuggling narcotics and currency into the United States. The TECS report was based on information previously submitted to the United States Government by the Royal Canadian Mounted Police.

Inspector Haigh also gave the defendant a standard Customs Declaration Form to fill out (Form 6059B). Defendant checked "no" to the question on the form which asks the passenger to state whether he or she is transporting more than $10,000 in monetary instruments into or out of the United States. Defendant was also asked this question verbally by Inspector Haigh and replied "no." Inspector Haigh asked the defendant to open his briefcase but no contraband or currency was discovered therein. Intrigued by the match of defendant's name with the TECS information, Inspector Haigh asked the INS further to investigate the defendant.

Defendant was questioned by INS Agent William Horn. Agent Horn was unable to obtain any arrest record for the defendant from Canadian authorities. Although Agent Horn was not positive after his questioning whether defendant was indeed the same individual as that mentioned in the TECS output, he advised the Customs Service that he believed that "the person who was in front of me [defendant] was the subject of at least one of the remarks on the TECS printout, and that I suspected that he was carrying something into the United States." Record at 78. It should also be noted that neither the defendant nor his belongings were searched by Agent Horn.

The above procedures resulted in the defendant missing his planned Delta flight. Defendant made new travel arrangements which entailed boarding an Eastern Airlines flight that would make a stopover at LaGuardia Airport in New York City. At the gate leading to this flight defendant was given a new Form 6059B to fill out and he again checked "no" to the question which asks whether a passenger is transporting more than $10,000 in monetary instruments into or out of the United States.

In New York, Special Agent John Clark of the Customs Service was informed of the imminent arrival of the defendant and of the TECS "hit." Together with another Special Agent, Beck, and a uniformed Customs Inspector, Agent Clark responded to LaGuardia Airport in order to meet the defendant. Although Agent Clark was part of a currency law enforcement group, he was not sure at the time whether the defendant was bringing currency or drugs into the United States. Record at 50.

Upon deplaning, the defendant was led by Agent Clark into a small examination room at LaGuardia Airport. Noticing the bulky appearance of defendant's suit jacket and concerned about his own personal safety, given the small confines of the examination room, Agent Clark ordered the defendant to remove his jacket. Four packets of currency were found wrapped in tissue paper, concealed in the jacket. The defend-

ant was then asked to remove his shirt and an additional packet containing $10,000 was discovered. Agent Beck conducted a pat-down of the defendant and an additional $5,000 was discovered in defendant's left sock.

After these discoveries Agent Beck asked the defendant whether it was true that he had filed a declaration in Canada which falsely represented that he was not transporting more than $10,000 in monetary instruments. The defendant replied, "yes." Agent Beck thereupon advised the defendant of his rights pursuant to *Miranda* and placed him under arrest. Agent Clark repeated the *Miranda* warnings in Spanish. The defendant waived his rights and agreed to talk to the Agents.

Agent Clark asked the defendant whether he was aware of the $10,000 reporting requirement and the defendant said, "yes." Defendant then admitted to having failed to comply with the reporting requirement. At this point the Agents decided to transport defendant to their office at John F. Kennedy International Airport ("JFK") and ceased all questioning.

At JFK the Agents again advised the defendant of his rights and informed him that he could communicate with a lawyer. Defendant did indeed call a lawyer and after the telephone call declined to discuss his case any further with the Agents. No further questioning of the defendant took place. In all, $56,200 was seized from the defendant.

II. *Suppression Motion*

Defendant has moved to suppress any evidence derived from his encounter with the Agents and Inspectors in this case. He further contends that because the search conducted in this case was illegal, any subsequent statements he made are tainted and must also be suppressed. Defendant advances several arguments in support of his suppression motion. Defendant's main contention is that the pre-clearance center at Dorval Airport in Canada was the functional equivalent of the border of the United States. From this proposition defendant

draws the conclusion that his arrival at LaGuardia Airport was not a border crossing and therefore any search at LaGuardia could only have been conducted pursuant to a warrant based on probable cause as set forth in 31 U.S.C. § 5317(a).

## DISCUSSION

■ At the outset the Court directs the parties' attention to its opinion in *United States v. Ernesto Turner,* 639 F.Supp. 982, 1986, in which the Court interpreted 31 U.S.C. § 5317(b). In *Turner* the Court held that § 5317(b) applied *only* in those cases where the search was conducted for the *sole* purpose of detecting violations of the currency reporting laws. Based on the legislative history discussed in *Turner,* as well as the general statutory framework, the Court concludes that the warrant requirement of § 5317(a) also applies only in those searches conducted for the express purpose of detecting currency law violations.

In the case at bar, the Customs officials were not sure whether the defendant might be smuggling drugs or currency into the United States. Record at 50. The information in the TECS printout indicated that defendant was involved in drug trafficking and the agents obviously wanted to prevent the introduction of narcotics into the United States. Investigation of currency law violations was no doubt a concurrent concern of the Agents. Thus, in the present case, it could well be argued that neither § 5317(a) or (b) applied but rather that the search at LaGuardia was a typical border search for contraband governed in a constitutional sense by the Supreme Court's decisions in *United States v. Ramsey,* 431 U.S. 606, 97 S.Ct. 1972, 52 L.Ed.2d 617 (1977), and *United States v. Montoya De Hernandez,* — U.S. ——, 105 S.Ct. 3304, 87 L.Ed.2d 381 (1985), and based on other broad statutory authority granted to the United States Customs Service, such as 19 U.S.C. § 1467. When considered in this light, the search in this case was clearly

legal, well within the constitutional limits of a warrantless border search.

Even assuming, *arguendo,* that the search in this case was conducted for the express purpose of detecting currency law violations, it still does not follow that the warrant requirement of § 5317(a) applies. Defendant argues that the pre-clearance center in Canada was the functional equivalent of the United States border. This proposition is a correct statement of the law. *See United States v. Walczak,* 783 F.2d 852 (9th Cir.1986). The Court fails to see, however, how the defendant draws the further conclusion that because the pre-clearance center is the functional equivalent of the border, LaGuardia Airport is not a border area and therefore § 5317(a) applies rather than § 5317(b) and a warrant was necessary.

The Court finds no support for the defendant's novel proposition that § 5317(a) applies to non-border searches for monetary instruments while § 5317(b) applies to searches for monetary instruments occurring at the border. The Court interprets these statutory sections as giving the Customs Service alternative authorities under which to conduct searches for monetary instruments in areas under their jurisdiction. The Court can find no legislative intent to confer differing search authorities depending on where the search took place.

The Court is convinced that § 5317(b), which permits searches for monetary instruments based on reasonable suspicion, *see* the Court's opinion in *Turner,* would apply here, rather than § 5317(a), which requires a warrant.

Even accepting defendant's argument that § 5317(b) applies only to searches at the border, § 5317(b) applies to the search in this case because LaGuardia Airport clearly is part of the border of the United States. The border of the United States is not solely the physical boundary of the country but includes airports which accept flights from abroad. *See Almeida-Sanchez v. United States,* 413 U.S. 266, 273, 93 S.Ct. 2535, 2539, 37 L.Ed.2d 596 (1973). The pre-clearance center's status as a bor-

der point does not make the United States destination of pre-cleared flights not a border point. *Both* areas are and may be considered to be the functional equivalent of the border. Logic and precedent compel this conclusion.

Under the extended border search doctrine, searches may be conducted thousands of miles away from the border and for some time after a border has actually been crossed. *See United States v. Whiting,* 781 F.2d 692, 695 (9th Cir.1986) (and cases cited therein). In the present case there is no doubt that whatever contraband or currency the defendant possessed in Canada would also be on his person when he arrived at LaGuardia. The search at LaGuardia, therefore, was clearly performed at the border under this doctrine, even though there may have been an initial border crossing and Customs inspection in Canada. *See United States v. Espericueta-Reyes,* 631 F.2d 616, 619 (9th Cir.1980). The search at LaGuardia could also be classified as a secondary Customs search, which may be conducted after an initial Customs inspection. *United States v. Nieves,* 609 F.2d 642, 646–47 (2d Cir.1979), *cert. denied, Figueroa v. United States,* 444 U.S. 1085, 100 S.Ct. 1044, 62 L.Ed.2d 771 (1980).

The Court concludes that defendant's arrival at LaGuardia Airport was a border crossing and that the search that took place there was a search conducted at the border. Applying § 5317(b) to the facts of this case it is clear that the search was conducted pursuant to the reasonable suspicion which § 5317(b) requires. Defendant's flight plans indicated Panama as the destination, a country with a notorious reputation as a haven for money launderers as well as a transshipment point of narcotics. His name had appeared on the TECS readout as a suspected narcotics trafficker. He had acted suspiciously at the pre-clearance area in Canada. There was more than sufficient justification to search defendant and the search was therefore perfectly legal.

Having found the search to be proper, it follows that not only is the physical evidence seized admissible but so are the statements made by the defendant as they are not tainted by an illegal search. Furthermore, defendant's right to counsel was not violated as the Agents ceased questioning the defendant after he requested permission to call his lawyer. There was also no violation of the principles of *Miranda* here. The Agents and Inspectors had a right to make routine Customs inquiries as well as to ask the defendant whether he was transporting more than $10,000 and whether he had filed the appropriate report, without first giving *Miranda* warnings. *See United States v. Silva,* 715 F.2d 43, 46–48 (2d Cir.1983); *United States v. Cutaia,* 511 F.Supp. 619, 623–24 (E.D.N.Y.1981). No custodial interrogation had occurred and, indeed, the Agents had a duty to ask the questions they did. *See United States v. Gomez Londono,* 553 F.2d 805, 811 (2d Cir.1977).

### CONCLUSION

Defendant's motion to suppress is without merit and is hereby denied.

### III.  *Other Motions*

As for defendant's boiler plate requests for discovery and a bill of particulars, the Court has confidence that the Assistant United States Attorney will fully comply with his obligations under the Federal Rules of Criminal Procedure and relevant case law. The defendant may make an application at some later time if he feels he has not received all the material to which he is legally entitled.

SO ORDERED.